## UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| DONALD R. HALL, an adult individual, | CIVIL |
| Plaintiff, | DIVISION No.: |
| v. | 2:22-cv-1165 |
| LIGONIER VALLEY POLICE DEPARTMENT, an unincorporated police association, DANIEL DORAZIO, an adult individual, MATTHEW E. SHERER, an adult individual, LOYALHANNA ASSOCIATION, a Pennsylvania corporation, THOMAS J. KOKOSKA, and adult individual, BRUCE A. WADSWORTH, an adult individual, LIGONIER LANES, INC. d/b/a WICKED GOOGLY, a Pennsylvania close corporation, | **JURY TRIAL DEMANDED** |
| Defendants. | |

## <u>COMPLAINT IN CIVIL ACTION</u>

AND NOW, comes the Plaintiff, Donald R. Hall, by and through his attorneys, Joseph M. Gaydos, Jr., Michael R. Potochny and Gaydos Law, P.C., and files the within Complaint in Civil Action and in support thereof aver as follows:

## <u>PRELIMINARY STATEMENT</u>

1.      Donald R. Hall ("Plaintiff") was subjected to a state created danger in violation of rights guaranteed to him under the Fourth and Fourteenth Amendments to the United States Constitution. Plaintiff was also denied due process of law guaranteed to him under the Fourteenth Amendment of the United States Constitution.

2.      Plaintiff commences this action pursuant to 42 U.S.C. § 1983, which provides, in pertinent part, redress for every person within the jurisdiction of the United States for deprivation,

under color of state law, of rights, privileges, or immunities secured by the Constitution and laws

of the United States, and for Plaintiff's liberties and due process under the law.

3.      As a result of these constitutional violations, as set forth at length herein, Plaintiff

seeks compensatory damages, punitive damages, and reasonable attorney's fees as authorized by

and pursuant to 42 U.S.C. § 1988.

4.      Plaintiff additionally invokes this Court's supplemental jurisdiction by asserting

state tort claims sounding in negligence and Dram Shop liability under 47 Pa. C.S. § 4-493.

## JURISDICTION AND VENUE

5.      42 U.S.C. § 1983 and 42 U.S.C. § 1988 provide jurisdiction over Plaintiff's

constitutional claims for redress, which are conferred on this Honorable Court by 28 U.S.C. §

1343(a)(3). Federal question jurisdiction is conferred on this Honorable Court by 28 U.S.C. § 1331

because this action arises under the Constitution and laws of the United States. This Honorable

Court has supplemental jurisdiction over all claims asserted under the laws of the Commonwealth

of Pennsylvania, pursuant to 28 U.S.C. 1367(a).

6.      Venue is proper in this District pursuant to 28 U.S.C. § 1391 because the events

and omissions giving rise to the Complaint occurred in Westmoreland County in the

Commonwealth of Pennsylvania.

## PARTIES

7.      Plaintiff is an adult individual who maintains a residence at 330 Keslar School

Road, Acme, Westmoreland County, Pennsylvania 15610.

8.      Defendant Ligonier Valley Police Department ("LVPD") is an unincorporated

association authorized by the Borough of Ligonier and Ligonier Township for the purpose of

providing protection to persons and property within the corporate boundaries of the Borough of Ligonier and Ligonier Township, in Westmoreland County, Pennsylvania.

9.     LVPD maintains a principal address at 1 Municipal Park Drive, Ligonier, Westmoreland County, Pennsylvania 15658. LVPD is part of a political subdivision of the Commonwealth of Pennsylvania, located within the boundaries of the Western Division of the United States District Court for the Commonwealth of Pennsylvania, where all acts and omissions alleged herein occurred. It was and is the responsibility of LVPD to properly hire, train, supervise, test, and discipline Police Department officers and to implement and to enforce proper policies and procedures to ensure that it and its officers were and are not intentionally, deliberately, or consciously indifferent to the lives and safety of citizens, including law enforcement officers. It was and is the responsibility and duty of LVPD to implement and enforce policies and procedures, including those involving the detainer and/or arrest of individuals suspected of driving under the influence of alcohol or narcotics.

10.     Upon information and belief, at all times material hereto, Defendant Matthew E. Sherer ("OFFICER SHERER" or "SHERER") was a police officer employed by LVPD, which is located at 1 Municipal Park Drive, Ligonier, Westmoreland County, Pennsylvania 15658.

11.     OFFICER SHERER is and was at all times material hereto an officer of the LVPD and acting under the color of state law. OFFICER SHERER is being sued in both his individual and official capacities. It was and is SHERER's responsibility and duty to comply with minimum constitutional requirements and to know and to comply with all constitutional and lawful policies, procedures, practices and customs of the Borough of Ligonier and Ligonier Township. It was SHERER's responsibility to know and to comply with all laws, including the Constitution and laws of the United States and of the Commonwealth of Pennsylvania, governing the performance

of his duties and not to be intentionally, deliberately, or consciously indifferent to any of those responsibilities or to the constitutional rights of others. In all of these responsibilities material to this lawsuit, SHERER failed while acting under color of state law.

12.     It is believed and therefore averred that (1) SHERER affirmatively used his authority in a way that created a danger to Plaintiff or that rendered Plaintiff more vulnerable to danger than had SHERER not acted at all; (2) SHERER had a responsibility to protect Plaintiff from causing the foreseeable harm arising from his actions; (3) SHERER's actions were a willful disregard of the harm to Plaintiff; and (4) SHERER'S reckless conduct and conscious indifference when he detained Plaintiff, including failure to apply the lawful policies, procedures, practices and customs of the Borough of Ligonier and Ligonier Township, created a relationship between the state and Plaintiff that rendered Plaintiff a foreseeable victim.

13.     Upon information and belief, at all times material hereto, Defendant Daniel Dorazio ("OFFICER DORAZIO" or "DORAZIO") was a police officer employed by LVPD, which is located at 1 Municipal Park Drive, Ligonier, Westmoreland County, Pennsylvania 15658.

14.     OFFICER DORAZIO is and was at all times material hereto an officer of the LVPD and acting under the color of state law. OFFICER DORAZIO is being sued in both his individual and official capacities. It was and is DORAZIO's responsibility and duty to comply with minimum constitutional requirements and to know and to comply with all constitutional and lawful policies, procedures, practices and customs of the Borough of Ligonier and Ligonier Township. It was DORAZIO's responsibility to know and to comply with all laws, including the Constitution and laws of the United States and of the Commonwealth of Pennsylvania, governing the performance of his duties and not to be intentionally, deliberately, or consciously indifferent to any of those

responsibilities or to the constitutional rights of others. In all of these responsibilities material to this lawsuit, DORAZIO failed while acting under color of state law.

15.     It is believed and therefore averred that (1) DORAZIO affirmatively used his authority in a way that created a danger to Plaintiff or that rendered Plaintiff more vulnerable to danger than had DORAZIO not acted at all; (2) DORAZIO had a responsibility to protect Plaintiff from causing the foreseeable harm arising from his actions; (3) DORAZIO's actions were a willful disregard of the harm to Plaintiff; and (4) DORAZIO'S reckless conduct and conscious indifference when he detained Plaintiff, including failure to apply the lawful policies, procedures, practices and customs of the Borough of Ligonier and Ligonier Township, created a relationship between the state and Plaintiff that rendered Plaintiff a foreseeable victim.

16.     At all times material hereto, all officers and employees of the LVPD who are identified by name or referenced herein acted in bona fide pursuance of general authority to act for the Borough of Ligonier and Ligonier Township on the subjects and matters to which their acts relate, which acts were and are imputed to the LVPD. At all times material hereto, the LVPD had final authority to make and establish policy governing the operations of the Police Department and the conduct of its officers and personnel.

17.     Loyalhanna Association, Inc. ("LOYALHANNA") is a domestic non-profit corporation engaged in the police protection and/or private police business. LOYALHANNA maintains a registered mailing address at P.O. Box 717, Ligonier, Westmoreland County, Pennsylvania 15658.

18.     Upon information and belief, Defendant, Thomas J. Kokoska ("KOKOSKA") was employed as a patrolman for LOYALHANNA and he acted as an agent, servant and/or employee

of LOYALHANNA within the scope and course of his duties, agency and/or employment and furtherance of his employer's interests.

19.     At all times material hereto, KOKOSKA is an adult individual who is believed to reside at 102 Singer Way, Ligonier, Westmoreland County, Pennsylvania 15658.

20.     At all times material hereto, LOYALHANNA, a private entity, and its agents, servants and/or employees who are identified by name or referenced herein, acted with the help of or in concert with LVPD and/or state officials, and was otherwise delegated a public function by the LVPD. At all times material hereto, there was a sufficiently close nexus between the LVPD and the challenged actions and/or inactions of LOYALHANNA such that the action of the latter may fairly be treated as that of the state itself.

21.     KOKOSKA is not a state official. However, it is averred that KOKOSKA acted under color of state law by conspiring with one or more state officials to deprive Plaintiff of his federal rights. Specifically, KOKOSKA agreed in some manner with LVPD, SHERER, and/or DORAZIO to do an act that deprived Plaintiff of his constitutional rights, and engaged in at least one act in furtherance of the conspiracy, as set forth at length below.

22.     It is believed and therefore averred that (1) KOKOSKA affirmatively used his authority in a way that created a danger to Plaintiff or that rendered Plaintiff more vulnerable to danger than had KOKOSKA not acted at all; (2) KOKOSKA had a responsibility to protect Plaintiff from causing the foreseeable harm arising from his actions; (3) KOKOSKA's actions were a willful disregard of the harm to Plaintiff; and (4) KOKOSKA'S reckless conduct and conscious indifference when he detained Plaintiff and/or moved Plaintiff's automobile, including any and all actions or inactions as directed by LVPD, created a relationship, in concert with LVPD's actions, that rendered Plaintiff a foreseeable victim.

23.     At all times material hereto, the actions and inactions of LOYALHANNA as set forth at length herein resulted from the significant encouragement, either overt or covert, of the LVPD.

24.     Defendant, Bruce A. Wadsworth ("WADSWORTH"), is an adult individual who is believed to reside at 116 Maine Lane, New Florence, Westmoreland County, Pennsylvania 15944.

25.     Defendant, Ligonier Lanes, Inc. ("LIGONIER LANES"), is a Pennsylvania close corporation with a principal place of business located at 209 W Main Street, Ligonier, Westmoreland County, Pennsylvania 15658.

26.     At all times material hereto, it is believed that LIGONIER LANES was doing business as the Wicked Googly bar and restaurant (the "Wicked Googly").

27.     At all times material hereto, it is believed and therefore averred that LIGONIER LANES leased, owned, operated, possessed, controlled and/or maintained the Wicked Googly.

28.     At all times material hereto, it is believed and therefore averred that LIGONIER LANES was a licensee of the Pennsylvania Liquor Control Board (License No. R17011) and was in the business of furnishing alcohol at an establishment known as the Wicked Googly located at 209 W Main Street, Ligonier, Westmoreland County, Pennsylvania 15658.

29.     At all times material hereto, LIGONIER LANES was acting by and through its respective agents, servants, employees, officers and/or representatives who were acting within the course and scope of their respective agency, servitude, employment, office and/or representative capacities.

## **OPERATIVE FACTS**

30.     On the evening of November 2, 2020, at or about 6:30 P.M., Plaintiff lawfully entered the premises known as Wicked Googly as a patron and/or business invitee.

31.     Beginning at or about the above-referenced time, LIGONIER LANES, by and through its agents or employees, continuously served Plaintiff with alcoholic beverages over the course of an approximately four-hour period.

32.     During the course of the above-described period, LIGONIER LANES served Plaintiff more than one dozen alcoholic beverages, consisting primarily of beers and shots of liquor.

33.     During the course of the above-described period, Plaintiff became visibly intoxicated to the extent that his behavior became erratic and belligerent for other individuals situated at the Wicked Googly, including WADSWORTH, who was also a patron being served alcoholic beverages at the establishment.

34.     By way of example, LIGONIER LANES caused Plaintiff to become so intoxicated that he engaged in a loud, verbal altercation with another individual in the men's restroom in the presence of other patrons and employees of LIGONIER LANES.

35.     Notwithstanding this altercation and their actual knowledge and notice of the same, LIGONIER LANES continued to serve Plaintiff with beers and shots of liquor while he was visibly and noticeably intoxicated.

36.     Subsequently, when Plaintiff identified that a former romantic partner, Heather Tinkey ("TINKEY"), was also in the establishment, Plaintiff caused a scene when he boisterously shouted his continued affection for her to the disturbance and/or annoyance of other patrons situated in the Wicked Googly.

37.    Upon information and belief, TINKEY was embarrassed by Plaintiff's public display and exited the establishment shortly after being confronted with Plaintiff's boisterous demonstration of affection.

38.    At all times material hereto, LIGONIER LANES continued to serve alcoholic beverages to Plaintiff while he had the following obvious impairments: glassy and bloodshot eyes; loud and slurred speech; lack of coordination or concentration; staggered walk; aggressive behavior; impairment of decision-making process; and swaying.

39.    At or about 10:30 P.M., after LIGONIER LANES had served him with an unreasonable number of alcoholic beverages over the course of a four-hour period, Plaintiff stumbled noisily out of the establishment and into his vehicle with the intention of traveling to TINKEY's residence.

40.    Despite Plaintiff's obvious impairments and noticeable intoxication, LIGONIER LANES failed to offer, arrange or otherwise provide alternative means of transportation for Plaintiff prior to his exiting the Wicked Googly.

41.    At or about 10:40 P.M., Plaintiff arrived at TINKEY's residence located on Weaver Mill Road in Rector, Pennsylvania, where he proceeded to loudly knock on TINKEY's doors and windows in such an intoxicated and disorderly manner as to cause a disturbance for TINKEY and nearby residents.

42.    At all times material hereto, Plaintiff's visible and noticeable intoxication was the direct and proximate result of LIGONIER LANES having overserved him with alcoholic beverages.

43.     At or about 10:45 P.M., the LVPD received a call from TINKEY regarding Plaintiff's condition and it is believed that Officers SHERER and DORAZIO of the LVPD were dispatched to the TINKEY residence shortly thereafter.

44.     At the time SHERER and DORAZIO arrived at the scene, Plaintiff was asleep in his vehicle which was parked in the front of TINKEY's residence. Plaintiff's vehicle was not running at this time.

45.     Shortly thereafter, DORAZIO initiated contact with Plaintiff, removed him from his vehicle, and subsequently detained him with handcuffs and placed him in his patrol vehicle in front of TINKEY's residence.

46.     During the course of his investigation, DORAZIO conducted a field sobriety test and preliminary breath test (PBT) whereby Plaintiff registered more than twice the legal limit for operating a motor vehicle.

47.     Officers DORAZIO and SHERER spoke with TINKEY to assess whether she wished to file a formal complaint against the severely intoxicated Plaintiff to which she adamantly refused.

48.     After speaking with TINKEY, Officers DORAZIO and SHERER indicated to Plaintiff that TINKEY did not wish to pursue charges and that they intended to detain him overnight at the precinct.

49.     At all times material hereto, DORAZIO and the LVPD utilized their legal authority to deprive Plaintiff of his freedom of movement whereby Plaintiff believed he was under arrest.

50.     At or about this time, Officers DORAZIO and SHERER contacted LOYALHANNA for assistance in moving Plaintiff's vehicle to Barb's Country Store on Linn Run Road in Rector, Pennsylvania.

51. Upon information and belief, KOKOSKA, as an agent and employee of LOYALHANNA, arrived at the TINKEY residence to assist LVPD and Officers DORAZIO and SHERER with removing Plaintiff's vehicle to Barb's Country Store.

52. At all times material hereto, Plaintiff's vehicle was unregistered, without valid inspection, and with tires that would fail a state inspection.

53. At all times material hereto, the LVPD, including Officers DORAZIO and SHERER, knew that Plaintiff's vehicle did not comply with the above-referenced requirements related to registration and vehicle inspection.

54. Nonetheless, Officers DORAZIO and SHERER directed KOKOSKA to operate and remove Plaintiff's vehicle to Barb's Country Store where it created a trespass upon private property.

55. Officers DORAZIO and SHERER directed KOKOSKA, who is not a state official, to act under color of state law by conspiring with one or more state officials to deprive Plaintiff of a federal right.

56. Subsequently, the LVPD, by and through DORAZIO, transported Plaintiff in the direction of the police department by way of their patrol car. During the course of transporting Plaintiff, LVPD officers audibly complained about having to "babysit" Plaintiff all night at the police station and that they would have to wake up the police chief. At all times material hereto, Plaintiff was restrained and believed he was under arrest.

57. However, instead of transporting Plaintiff safely to the precinct, DORAZIO contacted WADSWORTH, who was earlier a patron at the Wicked Googly, to pick up Plaintiff from the Sheetz gas station located approximately one-half mile from the police department.

58.    At this time, Plaintiff remained visibly and noticeably intoxicated as a direct and proximate result of being overserved alcoholic beverages at the Wicked Googly.

59.    When WADSWORTH arrived at the Sheetz gas station, DORAZIO advised him that Plaintiff was severely intoxicated and unfit to drive. DORAZIO further advised WADSWORTH that he was not to allow Plaintiff to return to the TINKEY residence or otherwise operate his vehicle until no sooner than the following morning.

60.    WADSWORTH agreed to take custody of Plaintiff and return him to his home for the evening, and DORAZIO then removed Plaintiff's handcuffs and left the Sheetz gas station.

61.    In direct contravention of his representations to the LVPD, WADSWORTH promptly transported Plaintiff to his vehicle at Barb's Country Store so that Plaintiff could operate his vehicle, despite WADSWORTH having actual knowledge of Plaintiff's inability to safely do so.

62.    After WADSWORTH left the scene, Plaintiff entered his vehicle again while in a severely intoxicated condition. At this time, KOKOSKA, who had been surveilling the area where Plaintiff's vehicle was parked, waited for Plaintiff to operate his vehicle and then contacted the LVPD by radio when Plaintiff entered the roadway.

63.    At or about 12:00 A.M., Plaintiff traveled west on Rector Road approximately 0.3 miles east from PA-711 when his passenger-side tires left the roadway onto the berm. Plaintiff continued to travel straight and failed to negotiate a left curve in the roadway, causing him to strike a tree.

64.    Subsequently, Plaintiff's vehicle rotated clockwise, continued to travel at speed through a driveway at 226 Rector Road, and violently collided with another tree with the point of impact near the front driver-side door.

65.     Upon the disabling collision with the tree, Plaintiff was partially ejected from the driver-side window, and Plaintiff suffered significant, life altering injuries and damages as set forth at length herein.

66.     As a direct and proximate cause of the acts and omissions of Defendants herein, Plaintiff sustained the following injuries, *inter alia*, some or all of which may be permanent in nature:

a.  Polytrauma involving paraplegia in bilateral lower extremities;

b.  Injuries and persistent issues requiring amputation of one or more lower extremities;

c.  Persistent ventilator-dependent respiratory failure;

d.  Bilateral pneumothorax with pulmonary contusions;

e.  Left hemothorax;

f.  Multiple splenic lacerations up to 4 cm (grade 3);

g.  T11 chance fracture status post fixation;

h.  Midline subdural hematoma and basal subarachnoid hemorrhage;

i.  Right medial malleolar fracture;

j.  Right distal & proximal fib fracture;

k.  Left radial/ulnar fracture;

l.  Left comminuted fibula fracture;

m.  Left medial malleolar fracture;

n.  Bilateral pubic rami fractures unstable status post fixation;

o.  Left calf laceration & left complex ear laceration s/p repair;

p.  Blunt cardiac injury;

q.  Hypovolemic shock & ABLA secondary to trauma;

r.  Rhabdomyolysis;

s.  Complete traumatic spinal cord transection at T11;

t.  Pneumonia;

u.  Voluminous diarrhea, insensible losses causing hypernatremia;

v.  Acute Pulmonary Embolism;

w.  Respiratory failure requiring mechanical ventilation;

x.  Hyperthermia;

y.  Acute respiratory distress syndrome;

z.  Impairment to cognitive function, including loss of short-term memory and other accident-related cognitive deficiencies;

aa. Bruises, contusions, and other injuries in or about the nerves, muscles, bones, tendons, ligaments, tissues and vessels of the body;

bb. Neurological damage;

cc. Stroke with loss of memory and reduced speech function;

dd. Heart infection;

ee. Persistent UTIs and attendant pain and discomfort;

ff.  Nervousness, emotional tension, anxiety, and depression;

gg. Inability to ambulate;

hh. Difficulties with activities of daily living;

ii.  Shock and insult to the nerves and nervous system;

jj.  Severe emotional distress, anxiety, stress and/or loss of sleep and disrupted sleep patterns;

kk. Loss of health, strength, vigor, and vitality; and

ll.  Other serious, severe, and life threatening injuries, the exact nature of which are unknown to Plaintiff at this time.

67.     As a direct and proximate result of Defendants' acts and omissions, Plaintiff sustained the following damages, some or all of which are or may be permanent in nature:

   a.  He has endured, and will continue to endure, great pain, suffering, inconvenience, embarrassment, mental anguish, monetary expenditures for the care of his injury, and emotional and psychological trauma;

   b.  He has been, and will be, required to expend large sums of money for medical treatment and care, medical supplies, rehabilitation and therapeutic treatment, medicines, and other attendant services, including modification of his living areas to accommodate his permanent disability;

   c.  His general health, strength, and vitality have been impaired;

   d.  He is paralyzed, has underwent multiple surgeries and may, in the future, be required to face numerous additional surgeries;

   e.  He has sustained and will continue to sustain lost earnings and his earning capacity has been and may be permanently impaired;

   f.  He has suffered an interruption and/or disruption of familial relationships; and

   g.  He has been and will in the future be unable to enjoy the various pleasures of life that he previously enjoyed including, but not limited to, those which required ambulation.

68.     As a direct and proximate result of the acts and omissions of certain Defendants, as set forth at length herein, Plaintiff was denied his substantive due process rights under the law.

## FEDERAL CLAIMS AND CAUSES OF ACTION

### COUNT I – 42 U.S.C. § 1983
### STATE-CREATED DANGER
*Plaintiff v. Ligonier Valley Police Department, Daniel Dorazio and Matthew E. Sherer*

69.     Plaintiff hereby incorporates by reference all preceding paragraphs with the same force and effect as if fully set forth at length herein.

70.     This claim is alleged pursuant to Section 1983 of the Civil Rights Act, 42 U.S.C. § 1983.

71.     The claims alleged herein are predicated upon the applicable law and controlling doctrine, which, at all times material hereto, were clearly established.

72.      The conduct of LVPD, DORAZIO and SHERER, each of them, as set forth above, acting under color of state law, harmed Plaintiff, and was recklessly and deliberately indifferent to the safety, bodily integrity, well-being, privacy and liberty of Plaintiff, and was committed in conscious disregard of the substantial and/or unjustifiable risk of causing harm to Plaintiff, and was so egregious as to shock the conscience.

73.     The conduct of LVPD, DORAZIO and SHERER as set forth above violated Plaintiff's constitutional rights while in custody, particularly rights to be free of state created danger, and to substantive and procedural due process, as guaranteed by the United States Constitution and as remediable pursuant to 42 U.S.C. § 1983.

74.     The conduct of LVPD, DORAZIO and SHERER acting under color of law created a dangerous situation by willfully disregarding the safety of Plaintiff thereby causing foreseeable and direct harm to Plaintiff.

75.     The affirmative conduct of LVPD, DORAZIO and SHERER which created the dangerous situation that caused harm to Plaintiff consisted of, but was not necessarily limited to, the following:

  a. Releasing Plaintiff from custody and/or arrest into an unreasonably dangerous situation that would not have existed but-for their reckless indifference to Plaintiff's safety;

  b. Affirmatively discharging custody of Plaintiff when he was visibly and noticeably intoxicated and after they had actual notice of his severe intoxication and desire to operate a motor vehicle;

  c. Affirmatively relinquishing custody of Plaintiff to WADSWORTH instead of detaining him overnight at the precinct as initially stated, without conducting any investigation whatsoever as to WADSWORTH's ability to assume custody of Plaintiff under the circumstances then and there existing;

d.  In conspiring with LOYALHANNA and KOKOSKA in furtherance of a deprivation of rights, and directing them to move Plaintiff's vehicle to private property when, *inter alia*, they knew and/or should have known that Plaintiff's vehicle was unregistered, did not have a valid inspection and had tires that would fail a state inspection;

e.  In conspiring with LOYALHANNA and KOKOSKA by failing to impound Plaintiff's vehicle thereby placing Plaintiff into a position where, at best, he would be required to move an unregistered, uninspected and uninsured vehicle in violation of the Vehicle Code and, at worst, he would operate the motor vehicle in the same severe and visibly intoxicated condition that he demonstrated when the LVPD arrested and/or detained him previously;

f.  In directing LOYALHANNA and KOKOSKA to surveil Plaintiff's vehicle at Barb's County Store in order to see whether Plaintiff would attempt to operate his vehicle while visibly and noticeably intoxicated such that a second stop and criminal charges could be initiated against Plaintiff; and

g.  In otherwise failing to prevent Plaintiff from succumbing to the substantial permanent injuries which were directly and proximately caused by the unreasonable danger that resulted from their actions and inactions.

76.    The affirmative actions of LVPD, DORAZIO and SHERER were an exercise and misuse of authority in a way that created danger to Plaintiff and rendered him more vulnerable to danger, which danger in fact occurred resulting in serious and permanent injury.

77.    The serious and permanent injuries of Plaintiff were foreseeable and direct consequences of the actions of DORAZIO and SHERER, which created an unnecessary danger of harm.

78.    DORAZIO and SHERER acted with conscious disregard and/or deliberate indifference for the safety of Plaintiff and/or with a degree of culpability that shocks the conscience.

79.    The relationship between Officers DORAZIO and SHERER and Plaintiff was such that Plaintiff was the foreseeable victim of the actions of Officers DORAZIO and SHERER and/or

Plaintiff was a member of the class of persons subjected to the potential harm brought about by their actions.

80.     Officers DORAZIO and SHERER used their authority, by and through the LVPD, and acted to create an opportunity that otherwise would not have existed for the harm to occur, creating a danger to Plaintiff and/or rendering him more vulnerable to danger than had Officers DORAZIO and SHERER not acted to assume custody and control of Plaintiff and later relinquish detainer in act of deliberate indifference and/or conscious disregard.

81.     Officers DORAZIO and SHERER intended to harm and/or consciously disregarded and/or were deliberately indifferent to a substantial and foreseeable risk of harm.

82.     As a direct and proximate result of the conduct of DORAZIO and SHERER, which was carried out under color of state law, Plaintiff was deprived of rights and privileges secured to him by the Due Process Clause of the Fourteenth Amendment of the United States Constitution to have protection from state-created dangers.

83.     Officers DORAZIO and SHERER, by and through the LVPD, violated a clearly established constitutional right.

84.     Officers DORAZIO and SHERER, by and through the LVPD, knew or reasonably should have known that their actions violated that right.

85.     The actions of DORAZIO and SHERER as described above were willful, wanton, reckless, callously indifferent, and in conscious disregard for the safety of others.

86.     As a direct and proximate result of the above-described actions of DORAZIO and SHERER, Plaintiff sustained grievous and permanent injuries, as set forth at length above.

WHEREFORE, Plaintiff demands judgment in his favor against LVPD, DORAZIO and SHERER, jointly and severally, as follows: award of damages, including, without limitation,

punitive damages and compensatory relief for the unlawful acts of these defendants, including for constitutional deprivations, physical and emotional pain and suffering, and all damages permitted by law under the Civil Rights Act and Pennsylvania common law; award to Plaintiff, pursuant to 42 U.S.C. § 1988 of reasonable attorneys' fees, costs, and disbursements; medical bills; expert fees, costs, and expenses of litigation; any and all equitable relief that this Court may deem equitable and proper under the circumstances; and such other and further damages as this Court may deem just and proper under the circumstances.

### COUNT II – 42 U.S.C. § 1983
### *MONELL* CLAIM/FAILURE TO ADEQUATELY TRAIN
### *Plaintiff v. Ligonier Valley Police Department*

87.     Plaintiff hereby incorporates by reference all preceding paragraphs with the same force and effect as if fully set forth at length herein.

88.     This claim is alleged pursuant to Section 1983 of the Civil Rights Act, 42 U.S.C. § 1983 and *Monell v. Department of Social Services of New York City*, 436 U.S. 658 (1978).

89.     It is believed that LVPD, an unincorporated association authorized by the Borough of Ligonier and Ligonier Township, has policy making authority and knew or should have known of the need for an official policy and training related to the detention and arrest of intoxicated persons and inherent risks associated with releasing certain individuals from custody when they present an unreasonable risk of harm to themselves or others.

90.     LVPD was responsible for, acquiesced in, and/or was deliberately indifferent through policy, practice, customs, and/or procedure by failing to: develop, implement, carry out, and ensure compliance with policies, practices, customs, and/or procedures necessary to prevent the failure to properly respond to the arrest and/or detainer of visibly and/or demonstrably intoxicated motor vehicle operators; and/or properly and adequately train, test, and instruct officers

on the procedures for treating a motor vehicle operator in the custody of police who is visibly and/or demonstrably intoxicated, and relinquishing custody and/or detainer into unreasonably dangerous situations; and/or properly training and instructing officers on the policy and procedure for impounding vehicles which do not comply with the requirements set forth in the Vehicle Code.

91.     As a direct and proximate result of LVPD's conduct, which was carried out under the color of state law, Plaintiff was deprived of rights and privileges secured to him by the Fourteenth Amendment of the United State Constitution.

92.     Plaintiff's injuries subsequent to detainer and/or arrest by LVPD were the result of the deficient policies and/or customs which caused the deprivation of Plaintiff's constitutional rights, whereby said policies or customs were a direct and proximate cause of the constitutional harm and injuries as set forth at length herein.

93.     The failure of LVPD to train law enforcement officers shocks the conscience by evincing a deliberate indifference for the health and safety of persons affirmatively restrained and LVPD custody, generally, and for Plaintiff specifically.

94.     LVPD failed to train law enforcement officers to respond properly to the usual and recurring situations for which they must deal involving visibly intoxicated motor vehicle operators and, as such, the conduct by LVPD was the direct, proximate and substantial cause of Plaintiff's injuries and could have been avoided by specific training designed to avoid it.

95.     The failure of LVPD to train law enforcement officers conducting a custodial detention under circumstances that present an obvious and foreseeable risk of harm shows a deliberate indifference to the risk of injury and shocks the conscience.

96.     LVPD failed to train and/or promulgate official policy or customs instructing enforcement officers on how to deal with visibly and/or demonstrably intoxicated individuals following custodial detention.

97.     The failure of LVPD to train law enforcement officers as described herein shows a deliberate and/or conscious disregard for the constitutional due process generally and Plaintiff specifically.

98.     LVPD knew or should have known its current training regiment failed to prevent such outrageous conduct as was demonstrated in relation to Plaintiff.

99.     Plaintiff was caused to be injured as a result of LVPD failing to train law enforcement officers, and from defective policies, procedures, practices, customs or directives informally adopted by custom (hereinafter referred to "policy") of LVPD as follows:

    a.  A policy and custom of sanctioning, condoning or acquiescing to the release from detention of individuals and/or operators of motor vehicles who are visibly and demonstrably intoxicated and a risk of causing unreasonable harm to themselves or others by untrained and/or mistrained law enforcement officers;

    b.  A policy and custom of hiring and retaining officers, such as DORAZIO and SHERER, who engaged in untrained and/or mistrained behavior, including the release from detention of individuals and/or operators of motor vehicles who are visibly and demonstrably intoxicated and a risk to themselves and members of the public;

    c.  A policy and custom of failing to adequately or properly train or discipline its officers, such as DORAZIO and SHERER, so as to prevent untrained and/or mistrained behavior from injuring members of the public;

    d.  A policy and custom of improperly or inadequately investigating complaints of untrained and/or mistrained behavior on the part of its officers, including DORAZIO and SHERER;

    e.  LVPD maintained a policy and custom of allowing officers, such as DORAZIO and SHERER, to engage in untrained and/or mistrained behavior, to continue service with the public;

f.  A policy or custom that chose to discharge its public obligation by and through a private authority, specifically LOYALHANNA, in furtherance of a conspiracy to deprive Plaintiff of his constitutional rights; and

g.  LVPD knew or should have known that a failure to train law enforcement officers would result in constitutional violations against members of the public, yet, as a matter of *de facto* policy and custom, LVPD permitted and/or encouraged untrained and/or mistrained law enforcement officers to work.

100.  LVPD violated Plaintiff's clearly established constitutional rights because of its lack of a policy and/or its failure to provide adequate training to its police officers.

WHEREFORE, Plaintiff demands judgment in his favor against LVPD as follows: award of damages, including, without limitation, punitive damages and compensatory relief for the unlawful acts of these defendants, including for constitutional deprivations, physical and emotional pain and suffering, and all damages permitted by law under the Civil Rights Act and Pennsylvania common law; award to Plaintiff, pursuant to 42 U.S.C. § 1988 of reasonable attorneys' fees, costs, and disbursements; medical bills; expert fees, costs, and expenses of litigation; any and all equitable relief that this Court may deem equitable and proper under the circumstances; and such other and further damages as this Court may deem just and proper under the circumstances.

## STATE LAW CLAIMS

### COUNT III – NEGLIGENCE
### *Plaintiff v Thomas J. Kokoska*

101.  Plaintiff hereby incorporates by reference all preceding paragraphs with the same force and effect as if fully set forth at length herein.

102.  At all times material hereto, KOKOSKA, a private citizen and employee of LOYALHANNA, conspired with LVPD, SHERER, and/or DORAZIO to do an act that deprived Plaintiff of his constitutional rights, and engaged in at least one act in furtherance of the conspiracy.

103.     At all times material hereto, KOKOSKA had assumed a duty with respect to Plaintiff when he arrived at the TINKEY residence to investigate the scene at the direction of LVPD.

104.     At all times material hereto, KOKOSKA breached and/or failed to discharge his duty with respect to Plaintiff when he acted in furtherance of the LVPD's conspiracy to deprive Plaintiff of his constitutional rights. KOKOSKA facilitated the LVPD's decision to leave Plaintiff, a visibly and noticeably intoxicated motor vehicle operator, in an unreasonably dangerous situation where his peril was reasonably foreseeable.

105.     KOKOSKA operated in concert with and at the direction of the LVPD in releasing Plaintiff into an unreasonable danger which would not have existed but-for the actions of the LVPD under color of state law. KOKOSKA, among other things:

   a.   Moved Plaintiff's vehicle and caused a trespass upon private property when he had actual and/or constructive knowledge that the vehicle was unregistered, uninsured, and lacked a valid inspection sticker;

   b.   In surveilling Plaintiff's vehicle in order to see whether Plaintiff would attempt to operate his vehicle while visibly and noticeably intoxicated such that a second stop and criminal charges could be initiated against Plaintiff;

   c.   In physically observing Plaintiff enter private property and then operate his vehicle when KOKOSKA had actual knowledge that Plaintiff was visibly and noticeably intoxicated and that such operation would present a danger;

   d.   While acting in concert with LVPD under color of state law, failing to stop or otherwise prevent Plaintiff from operating said vehicle when he had actual knowledge of the dangerous condition then and there existing; and

   e.   In only notifying the LVPD by radio of Plaintiff's operation of the vehicle in order to facilitate an arrest for DUI and related charges, as opposed to taking action to eliminate the state created danger.

106.     KOKOSKA breached the duty of care owed to Plaintiff and as a direct and proximate result of the aforesaid acts, conduct, omissions, negligence, carelessness, wantonness

and/or recklessness of KOKOSKA, Plaintiff sustained substantial and permanent injuries as set forth at length above.

107.    The very nature, quantity, and type of reckless actions and inactions engaged in by KOKOSKA, which resulted in Plaintiff's injuries, evidence the outrageous, malicious, and intolerable conduct warranting the imposition of exemplary and/or punitive damages.

108.    This Court has supplemental jurisdiction to hear and adjudicate this claim pursuant to 28 U.S.C. § 1367(a).

WHEREFORE, Plaintiff demands judgment in his favor against KOKOSKA in an amount in excess of the jurisdictional limits, punitive damages, interest, costs of suit, attorney's fees and any other damages allowed under the law along with any such other relief that this Court may deem appropriate.

## COUNT IV – RESPONDEAT SUPERIOR
### Plaintiff v. Loyalhanna Association, Inc.

109.    Plaintiff hereby incorporates by reference all preceding paragraphs with the same force and effect as if fully set forth at length herein.

110.    At all times material hereto, KOKOSKA was an agent, servant, and/or employee of LOYALHANNA.

111.    At all times material hereto, KOKOSKA was acting in the course and scope of his employment with LOYALHANNA and at the express direction of LVPD.

112.    Accordingly, LOYALHANNA, a private police company, is responsible and liable for the actions of KOKOSKA, an employee that caused and/or contributed to the collision and events set forth at length herein during the course and scope of employment. Accordingly, LOYALHANNA is vicariously liable for the damages suffered by Plaintiff.

113.    This Court has supplemental jurisdiction to hear and adjudicate this claim pursuant to 28 U.S.C. § 1367(a).

WHEREFORE, Plaintiff demands judgment in his favor against LOYALHANNA in an amount in excess of the jurisdictional limits, punitive damages, interest, costs of suit, attorney's fees and any other damages allowed under the law along with any such other relief that this Court may deem appropriate.

## COUNT V – NEGLIGENCE
### *Plaintiff v. Bruce A. Wadsworth*

114.    Plaintiff hereby incorporates by reference all preceding paragraphs with the same force and effect as if fully set forth at length herein.

115.    At all times material hereto, WADSWORTH had a duty with respect to Plaintiff when he arrived at the Sheetz gas station and agreed to assume custody of Plaintiff.

116.    At all times material hereto, WADSWORTH's duty to Plaintiff consisted of, at minimum, acting as a reasonable person under the circumstances then and there existing.

117.    At all times material hereto, WADSWORTH was actually and constructively aware of Plaintiff's noticeable and visibly intoxicated condition and was instructed by LVPD as to Plaintiff's inability to safely operate a motor vehicle.

118.    Nonetheless, WADSWORTH specifically drove Plaintiff to his vehicle so that Plaintiff could continue to operate his vehicle. WADSWORTH transported Plaintiff and relinquished custody when he knew or should have known that this could provide an unreasonable risk to Plaintiff and others.

119.    At all times material hereto, WADSWORTH breached and/or failed to discharge his duty with respect to Plaintiff when he furnished the keys to a visibly and noticeably intoxicated

motor vehicle operator, placing Plaintiff in an unreasonably dangerous situation where his peril was reasonably foreseeable.

120.    WADSWORTH, acting in direct contravention of the express orders of the LVPD, breached the duty of care owed to Plaintiff and as a direct and proximate result of the aforesaid acts, conduct, omissions, negligence and carelessness of WADSWORTH, Plaintiff sustained substantial and permanent injuries as set forth at length above.

121.    This Court has supplemental jurisdiction to hear and adjudicate this claim pursuant to 28 U.S.C. § 1367(a).

WHEREFORE, Plaintiff demands judgment in his favor against WADSWORTH in an amount in excess of the jurisdictional limits, interest, and any other damages allowed under the law along with any such other relief that this Court may deem appropriate.

## COUNT VI – NEGLIGENCE
### *Plaintiff v. Ligonier Lanes, Inc.*

122.    Plaintiff hereby incorporates by reference all preceding paragraphs with the same force and effect as if fully set forth at length herein.

123.    At all times material hereto, LIGONIER LANES was a possessor of land who held the land out to the public for entry for their business purposes, operating as the Wicked Googly.

124.    The events as set forth herein which resulted in Plaintiff's severe, permanent injuries and disabilities were caused by the negligence, carelessness, recklessness and other wrongful liability-producing conduct of LIGONIER LANES.

125.    At all times material hereto, Defendant and its employees, servants, and/or agents were not adequately trained by anyone or any entity on the Responsible Alcohol Management Program (hereinafter referred to as "RAMP").

126. RAMP was created by the Pennsylvania Liquor Control Board to help licensees and their employees to serve alcohol responsibly. RAMP offers practical advice for licensees operating restaurants, hotels, clubs, distributors, and even special occasion permit holders. The RAMP program can be pursued voluntarily or ordered by an administrative law judge.

127. At all times material hereto, Defendant knew or should have known of the RAMP program and failed to adequately implement the program with its employees, servants, and/or agents.

128. RAMP explains, *inter alia*, how to (1) detect signs of impairment and intoxication and effectively cut off services to a customer who has had too much to drink; and (2) help reduce alcohol related problems, such as vehicle crashes, within a community.

129. At all times material hereto, LIGONIER LANES knew or should have known of the information, training, and certification the RAMP program offered to licensees such as LIGONIER LANES.

130. In order to comply with the RAMP program, all parts of the program must be completed, such as (1) Owner/Manager Training; (2) Server/Seller Training; (3) New Employee Orientation; (4) Signage; and (5) Certification and Compliance Visit.

131. At all times material hereto, it is believed that LIGONIER LANES failed to be certified in the RAMP program and/or failed to complete the required parts to be RAMP certified or maintain certification.

132. The benefits of the licensee in completing RAMP certification includes (1) knowledgeable, responsible, well trained alcohol service staff and management; and (2) recognition as a responsible licensee in the community.

133.    At all times material hereto, LIGONIER LANES knew or should have known of the benefits of completing RAMP certification.

134.    At all times material hereto, LIGONIER LANES did not adequately provide RAMP training to its employees, servants, management and/or agents.

135.    At all times material hereto, LIGONIER LANES, by exercise of reasonable care, could have discovered that its agents or employees were negligent in continuing to serve Plaintiff alcoholic beverages when he was visibly intoxicated.

136.    At all times material hereto, LIGONIER LANES had a duty to protect members of the public, including Plaintiff, from alcohol related problems, such as vehicle crashes, relating to its acts and omissions.

137.    LIGONIER LANES, by and through its agents or employees, was negligent, careless, reckless, willful and wanton in the following particulars:

    a.   In failing to forbid the distribution, sale, gift, or consumption of alcohol to someone who was visibly intoxicated;

    b.   In continuing to serve, furnish, and/or sell alcoholic beverages to Plaintiff when he was visibly and noticeably intoxicated;

    c.   In recognizing that Plaintiff was visibly and noticeably intoxicated and failing to prevent or otherwise stop him from leaving the establishment and operating a motor vehicle;

    d.   In recognizing that Plaintiff was visibly and noticeably intoxicated and failing to offer, arrange and/or provide alternate means of transportation for him;

    e.   In serving, furnishing, and/or selling alcoholic beverages to Plaintiff when LIGONIER LANES knew or should have known that Plaintiff would be operating a motor vehicle on the roadways while under the influence of intoxicated beverages;

    f.   In failing to stop serving, furnishing, or selling alcoholic beverages to Plaintiff after they knew or should have known that Plaintiff was visibly

and noticeably intoxicated and incapable of operating a motor vehicle safely;

g.  In failing to ensure that Plaintiff had an alternative source of transportation and utilized the same;

h.  In failing to comply with 47 P.S. §4-493 prohibiting the sale or gift of liquor/alcohol to persons visibly intoxicated;

i.  In failing to properly train and supervise agents, servants, workers and/or employees to refuse to serve, and/or refuse to make a gift of liquor/alcohol to persons who are visibly intoxicated;

j.  In failing to properly train and supervise its agents, servants, worker and/or employees to recognize symptoms and/or signs of visible intoxication of patrons;

k.  In failing to have any safeguards, systems and/or procedures in place so as to ensure that alcoholic beverages and/or products were not being served, furnished, gifted, distributed and/or otherwise provided to patrons who were visibly intoxicated;

l.  In failing to prevent its agents, servants, workers and/or employees from distributing, gifting and/or otherwise providing alcohol without restrictions to persons who were visibly intoxicated;

m.  In ignoring the pleas and complaints of LIGONIER LANES' patrons which informed management and/or agents at the Wicked Googly that Plaintiff was visibly intoxicated;

n.  In serving Plaintiff until he was unfit to operate a motor vehicle;

o.  In failing to provide adequate RAMP training to its employees, agents, and/or servants;

p.  In failing to provide adequate RAMP training to its management team;

q.  In needlessly endangering the public as well as the community;

r.  In recognizing the Plaintiff was intoxicated and allowing him to continue consuming alcoholic beverages;

s.  In failing to contact law enforcement authorities to prevent Plaintiff from operating a motor vehicle;

      t.    In portraying a reckless disregard for Plaintiff and the community as a whole;

      u.   In negligently allowing liquor to be consumed on its premises during business hours by one who is visibly intoxicated, thereby creating a dangerous, hazardous and unsafe situation; and

      v.   In specifically permitting Plaintiff to continue to consume alcohol on its premises when it knew, or reasonably should have known, that he was visibly intoxicated.

138.    The above-described accident occurred as a direct and proximate cause of LIGONIER LANES' negligence and its willful violation of the Pennsylvania Dram Shop Act, as set forth below.

139.    The act of serving a patron while said patron is visibly intoxicated is willful and wanton conduct and a gross act of recklessness. Therefore, LIGONIER LANES should be subject to the imposition of punitive damages, which Plaintiff hereby asserts.

140.    The act of permitting a visibly and noticeably intoxicated person to drive a vehicle is willful and wanton conduct and a gross act of negligence. Therefore, LIGONIER LANES should be subject to the imposition of punitive damages, which Plaintiff hereby asserts.

141.    The act of failing to arrange for alternative transportation for a visibly and noticeably intoxicated person is willful and wanton conduct and a gross act of recklessness. Therefore, LIGONIER LANES should be subject to the imposition of punitive damages, which Plaintiff hereby asserts.

142.    The act of failing to call the police and document the incident immediately when Plaintiff left its premises is willful and wanton conduct and a gross act of recklessness. Therefore, LIGONIER LANES should be subject to the imposition of punitive damages, which Plaintiff hereby asserts.

143.     As a direct and proximate result of LIGONIER LANES' negligent acts and omissions, including its careless, reckless, willful and wanton conduct, Plaintiff suffered substantial injuries and damages as set forth at length above.

WHEREFORE, Plaintiff, Donald R. Hall, demands judgment in his favor and against LIGONIER LANES, jointly and severally, in an amount in excess of the jurisdictional limits plus punitive damages, interest, costs, and all other relief this Honorable Court deems just and appropriate.

## COUNT VII – DRAMSHOP LIABILITY
### *Plaintiff v. Ligonier Lanes, Inc.*

144.     Plaintiff hereby incorporates by reference all preceding paragraphs with the same force and effect as if fully set forth at length herein.

145.     At all times material hereto, LIGONIER LANES was subject to the Dram Shop Act, §4-493 of the Pennsylvania Liquor Code.

146.     On or about November 2, 2020, LIGONIER LANES sold and provided alcohol to Plaintiff while he was visibly and noticeably intoxicated in violation of the Dram Shop Act, 47 P.S. §4-493(1).

147.     At all times material hereto, LIGONIER LANES' violation of the Dram Shop Act was both the proximate and actual cause of Plaintiff's injuries.

148.     LIGONIER LANES foresaw or should have foreseen Plaintiff's injuries as the natural and probable outcome of LIGONIER LANES' negligence in violating the Dram Shop Act.

149.     LIGONIER LANES was negligent in recognizing, or failing to recognize, that Plaintiff was visibility intoxicated and in allowing him to continue to consume alcoholic beverages.

150.    LIGONIER LANES' conduct demonstrated a wanton disregard for the safety of the Plaintiff and the community as a whole.

151.    LIGONIER LANES' conduct and wanton violation of the Pennsylvania Dram Shop Act was the direct and proximate cause of the aforementioned injuries and damages to Plaintiff.

152.    As a result of LIGONIER LANES' violation of the Dram Shop Act, Plaintiff sustained the aforementioned injuries and damages.

WHEREFORE, Plaintiff, Donald R. Hall, demands judgment in his favor and against LIGONIER LANES, jointly and severally, in an amount in excess of the jurisdictional limits plus punitive damages, interest, costs, and all other relief this Honorable Court deems just and appropriate.

## <u>JURY DEMAND</u>

Plaintiff hereby demands a jury trial as to all issues so triable as a matter of right pursuant to Federal Rule of Civil Procedure 38(b)(1).

Respectfully submitted,

GAYDOS LAW, P.C.

Dated: August 12, 2022

/s/ Joseph M. Gaydos, Jr.
/s/ Michael R. Potochny
Joseph M. Gaydos, Jr. (Pa. ID No. 49645)
Michael R. Potochny (Pa. ID No. 319629)
1223 Long Run Road
White Oak, PA 15131
(412) 678-7900
jgaydos@gaydoslaw.com
mpotochny@gaydoslaw.com
***Counsel for Plaintiff***